CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

DEC 07 2007

JOHN F. CORCORAN, CLERK
BY: _____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| CHARLOTTE P. BROWN, | ) |
| Plaintiff, | ) Civil Action No. 5:07CV00026 |
| v. | ) **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) By: Hon. Glen E. Conrad<br>) United States District Judge |
| Defendant. | ) |

Plaintiff has filed this action challenging the final decision of the Commissioner of Social Security denying plaintiff's claim for a period of disability and disability insurance benefits under the Social Security Act, as amended, 42 U.S.C. §§ 416(i) and 423. Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the requirements for entitlement to benefits under the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

The plaintiff, Charlotte P. Brown, was born on December 9, 1959. She eventually graduated from high school. Mrs. Brown has past relevant work experience as an administrative assistant. She last worked on a regular and sustained basis in December of 2003. On March 17, 2004, she filed an application for a period of disability and disability insurance benefits. Mrs. Brown alleged that she became disabled for all forms of substantial gainful employment on December 9, 2003, due to fibromyalgia and arthritis in her upper back. Mrs. Brown now maintains that she has remained disabled to the present time. The record reveals that Mrs. Brown met the insured status

requirements of the Act at all relevant times covered by the final decision of the Commissioner. See, gen., 42 U.S.C. § 423.

Plaintiff's claim was denied upon initial consideration and reconsideration. She then requested and received a de novo hearing and review before an Administrative Law Judge. In an opinion dated May 22, 2006, the Law Judge also ruled that Mrs. Brown is not disabled. The Law Judge found that Mrs. Brown suffers from several impairments that are severe within the meaning of the administrative regulations, including fibromyalgia/arthritis, obesity, and depression, but that these impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. See 20 C.F.R. § 404.1520(c)-(d). The Law Judge ruled that plaintiff's impairments render her disabled for performance of all past relevant work roles. The Law Judge concluded, however, that Mrs. Brown retains the residual functional capacity to perform a limited range of light work:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work requiring lifting up to twenty pounds occasionally and ten pounds frequently, standing and/or walking up to six hours in an eight-hour workday, sitting up to six hours in an eight-hour workday, and no postural, manipulative, visual, communicative or environmental limitations other than not working in hazardous conditions including at heights and around moving machinery.
>
> Additionally, the claimant has non-exertional limitations of only mild difficulty performing detailed and complex tasks due to difficulties with concentration, regular attendance in the workplace, performing work activities on a consistent basis, and completing a normal workday or workweek without interruption from psychiatric illness, has moderate limitations interacting with co-workers and the public as well as coping with routine stressors encountered in competitive work, but has no limitations accepting instructions from supervisors, and is able to perform simple, repetitive tasks.

2

(Tr. 15-16). Given such a residual functional capacity, and after consideration of plaintiff's age, education, and past work experience, as well as the testimony of a vocational expert, the Law Judge determined that Mrs. Brown can perform other jobs that exist in significant number in the national economy, including but not limited to the jobs of amusement attendant, file clerk, and bookkeeping clerk. Accordingly, the Law Judge ultimately concluded that Mrs. Brown is not disabled, and that she is not entitled to a period of disability or disability insurance benefits. See 20 C.F.R. § 404.1520(g). The Law Judge's opinion was adopted as the final decision of the Commissioner by the Social Security Administration's Appeals Council. Having exhausted all administrative remedies, Mrs. Brown has now appealed to this court.

While Mrs. Brown may be disabled for certain forms of employment, the crucial factual determination is whether she is disabled for all forms of substantial gainful employment. See 42 U.S.C. § 423 (d)(2). There are four elements of proof which must be considered in making such an analysis. These elements are summarized as follows: (1) objective medical facts and clinical findings; (2) the opinions and conclusions of treating physicians; (3) subjective evidence of physical manifestations of impairments, as described through a claimant's testimony; and (4) the claimant's education, vocational history, residual skills and age. Vitek v. Finch, 438 F.2d 1157, 1159-1160 (4th Cir. 1971); Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962).

After a review of the record in this case, the court is constrained to conclude that the Commissioner's final decision is supported by substantial evidence. The Law Judge's opinion reflects a thorough evaluation of Mrs. Brown's medical problems and the extent to which they affect her ability to work. Although Mrs. Brown suffers from fibromyalgia and obesity, substantial evidence supports the Law Judge's determination that her impairments do not preclude all substantial gainful activity. Likewise, the Law Judge properly determined that the plaintiff's

3

symptoms of depression do not render her totally disabled. The record supports the Law Judge's finding that, despite her physical and emotional impairments, the plaintiff retains the residual functional capacity to perform certain specific light work roles.

The medical record reveals that Mrs. Brown has a history of hypothyroidism, depression, chronic obesity, and fibromyalgia. (Tr. 173). As early as November of 2001, plaintiff's family physician, Theresa L. Miller, M.D., assessed plaintiff with fibromyalgia and multiple somatic complaints, stating that she believed that many of plaintiff's symptoms stemmed from depression. (Tr. 215). On October 9, 2003, Dr. Miller again stated that Mrs. Brown had a "whole list of somatic complaints." (Tr. 191). Dr. Miller noted that plaintiff was no longer seeing a psychiatrist for her affective disorder, and that plaintiff had "self discontinued her Celexa some time back." (Tr. 191). Dr. Miller prescribed Neurontin for pain, and commented that plaintiff might be more functional at work if she stayed on her medications. (Tr. 191).

Mrs. Brown commenced treatment at Augusta Pain Management Center on December 1, 2003, where she was examined by Dr. Victor C. Lee. Dr. Lee diagnosed plaintiff with fibromyalgia, for which he recommended continued medication management and trigger point therapy. (Tr. 329).

Plaintiff also began receiving treatment for depression in December of 2003. Kirsten Plehn, Ph.D., a licensed clinical psychologist at Comprehensive Health Systems, diagnosed plaintiff with major depressive order, recurrent, moderate, and assessed plaintiff with a Global Assessment of Functioning (GAF) of 65.[*] (Tr. 285).

---

[*] A GAF of 61 to 70 indicates "some mild symptoms ... OR some difficulty in social, occupational, or school functioning ... but generally functioning pretty well, has some meaningful interpersonal relationships." Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 1994).

4

On January 29, 2004, Dr. Miller noted that plaintiff was taking care of her grandson, that she was being treated by a psychologist for depression, and that her prescriptions for Abilify and Lexapro had "improved her mood mildly." (Tr. 184, 187). That same day, plaintiff returned for a follow-up evaluation with her psychologist. Dr. Plehn "explained [her] impressions that Ms. Brown is experiencing depression associated with her physical pain that appears to be responding to pharmacological management." (Tr. 272). Dr. Plehn opined that "the extent of her difficulties does not appear to be significant so as to be disabling." (Tr. 272). In February of 2004, Dr. Plehn again assessed plaintiff with a GAF of 65. (Tr. 271).

On February 18, 2004, Dr. Miller completed a medical statement on the plaintiff's behalf. Dr. Miller indicated that plaintiff is "forever" unable to work as a result of fibromyalgia and chronic depression. (Tr. 182, 183). When asked to set forth the objective findings that substantiate Mrs. Brown's impairments, Dr. Miller noted that "you should contact her pain management [physician] & psychiatrist" for this information. (Tr. 183).

Plaintiff underwent physical therapy in April of 2004, and made "good progress." (Tr. 313). Likewise, on April 28, 2004, Dr. Lee noted that plaintiff was "benefitting from trigger point therapy in the management of soft tissue musculoskeletal pain." (Tr. 310).

During a follow-up visit with Dr. Lee on June 4, 2004, Mrs. Brown reported that her pain was "fairly well controlled." (Tr. 305). Dr. Lee decided to switch plaintiff from Neurontin to Topamax, due to drowsiness, and noted that plaintiff did not require any injections. (Tr. 305). Likewise, on August 19, 2004, Dr. Lee stated that Mrs. Brown did not appear to be in need of injections, that her pain was ninety percent relieved since her last visit, that she had been using a TENS unit with good effect, and that she was feeling "quite good." (Tr. 298).

5

In August and December of 2004, mental residual functional capacity assessments were completed by two state agency psychologists. The psychologists noted that the plaintiff is moderately limited in her ability to understand, remember, and carry out detailed instructions, and in her ability to maintain attention and concentration for extended periods. (Tr. 161). No additional limitations were noted. (Tr. 161). The psychologists opined that plaintiff retains the mental residual functional capacity to perform "at least routine work." (Tr. 163).

On October 7, 2004, Mrs. Brown returned to Dr. Lee for a follow-up examination, during which she complained of increased pain. Dr. Lee assessed plaintiff with chronic musculoskeletal pain, noting that she had been controlling her pain with trigger point therapy, and that she had responded well to the use of a TENS unit. Dr. Lee also noted that plaintiff had found Neurontin to be helpful, but that she had stopped taking the medication secondary to weight gain. Dr. Lee decided to start plaintiff on Zonegram, and advised her that she may ultimately have to go back on Neurontin. (Tr. 296). Plaintiff returned to Dr. Lee for trigger point injections on December 10, 2004. Dr. Lee indicated that he had discontinued her use of Zonegram due to intolerance. (Tr. 294).

On November 16, 2004, Dr. Plehn completed a mental status evaluation, on which she noted that she had not seen Mrs. Brown since May of 2004. Dr. Plehn indicated that Mrs. Brown had a positive attitude at that time, that she was "fully oriented," "generally stable," and "logical," and that her ability to concentrate was only mildly affected by the existence of pain. (Tr. 255-258).

R.S. Kadian, M.D., a state agency physician, completed a physical residual functional capacity assessment on December 7, 2004. Based on his review of the existing medical records, Dr. Kadian opined that Ms. Brown can lift twenty pounds occasionally and ten pounds frequently, stand and/or walk about six hours in an eight-hour workday, sit for approximately six hours in an eight-

6

hour work day, and engage in unlimited pushing and/or pulling. (Tr. 247). Dr. Kadian also opined that plaintiff can only occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 248). To support his findings, Dr. Kadian emphasized that plaintiff has responded well to trigger point injections and the use of a TENS unit; that physical examinations have shown normal motor strength, intact reflexes, and normal sensory function; that plaintiff's gait has been normal; and that she is capable of caring for her personal needs and performing light housework by pacing herself as necessary. (Tr. 251). Dr. Kadian further emphasized as follows:

> While claimant's statements that she has had significant pain symptoms over time is [sic] supported by the evidence, her allegations of marked symptom severity and frequent inability to perform routine daily activities is only partially credible. The objective medical and other findings described above show good response to therapy and an ability to perform a wide range of light work.

(Tr. 252). Additionally, Dr. Kadian opined that Dr. Miller's February 2004 physician statement was not supported by the evidence. (Tr. 252).

Plaintiff returned to Dr. Lee on January 10, 2005. Dr. Lee noted that plaintiff was "actually feeling pretty good," and that he would "not be trying any new medications" at that time. (Tr. 293). On physical examination, plaintiff had "some tenderness across the shoulders and across the lower back but no outstanding trigger points." (Tr. 292). Her joints did not exhibit any swelling or erythema, she had full strength in her upper and lower extremities, her sensory and motor examinations were "grossly within normal limits," and she was "moving easily." (Tr. 292).

On February 10, 2005, Dr. Lee completed a physical capacities evaluation, on which he indicated that plaintiff could sit for a total of three hours in an eight-hour workday and stand and/or walk for a total of two hours in an eight-hour workday. (Tr. 289). Dr. Lee also indicated that plaintiff can only lift five pounds occasionally, and that she can "never" lift more than five pounds.

7

(Tr. 290). Dr. Lee further opined that the plaintiff's pain is moderate, constituting a "significant handicap with sustained attention and concentration." (Tr. 290).

Treatment notes from Augusta Pain Management Center dated March 10, 2005 indicate that Mrs. Brown complained of pain in her neck, right shoulder, lower back, and lower extremities, and that she reported a pain level of eight out of ten. However, on physical examination, plaintiff had "some generalized myofascial tenderness throughout the thoracolumbar paraspinous musculature, but nothing outstanding." (Tr. 362). Moreover, plaintiff had full strength in her upper and lower extremities, and her sensory and motor examinations were "grossly within normal limits." (Tr. 362).

On March 3, 2005, x-rays were taken of plaintiff's cervical spine and lumbosacral spine. Neither set of x-rays revealed any abnormalities. (Tr. 424).

Mrs. Brown underwent physical therapy between March 2005 and April 2005, after which she reported that she was "80% improved." (Tr. 368). Plaintiff also reported that her overall pain was much better, that her pain was less intense, and that it did not occur as frequently. (Tr. 368).

Plaintiff was examined by Dr. Lee on August 8, 2005. Dr. Lee noted that plaintiff "does have some generalized myofascial tenderness throughout the posterior neck, through the shoulders and upper back and across the lower back but nothing outstanding." Plaintiff's upper and lower extremity strength was five out of five. (Tr. 357). Treatment notes dated November 4, 2005 also reflect that plaintiff continued to have some generalized myofascial tenderness through the neck, shoulders, upper back, and lower back, but "nothing outstanding." (Tr. 354). Plaintiff's upper and lower extremity strength remained intact, and she was moving easily. (Tr. 354). On November 29, 2005, Dr. Lee noted that her current medication regimen "has been the best combination of medications that she has found to control her symptoms." (Tr. 352).

8

On October 3, 2005, Joseph J. Cianciolo, Ph.D., a licensed clinical psychologist, performed a psychological assessment. During the assessment, plaintiff reported that she was last treated for depression approximately eight to ten months earlier. (Tr. 343). Dr. Cianciolo noted that plaintiff's records indicate that psychotherapy was beneficial in improving plaintiff's mental status, and that plaintiff reported that she had recently begun taking Lexapro again, which worked well for her in the past. (Tr. 343). Dr. Cianciolo diagnosed plaintiff with major depressive disorder, recurrent, moderate, and assessed plaintiff with a current GAF of 60 and a past year GAF of 70. (Tr. 344).

Dr. Cianciolo also completed a mental functional capacity assessment, on which he opined that plaintiff is moderately restricted in her ability to interact appropriately with the public and her ability to respond appropriately to work pressures in a usual setting. (Tr. 348). Dr. Cianciolo noted slight or no restrictions in all other work-related areas. (Tr. 347-349).

During the administrative hearing, plaintiff testified that she currently weighs 198 pounds, and that her weight fluctuates between 198 and 227 pounds. (Tr. 442). Plaintiff testified that she is most comfortable "laying in bed," and that she spends "between 14 and 16 hours a day [in bed], including sleeping at nights." (Tr. 446). Plaintiff further testified that she sleeps approximately six hours between 8:00 a.m. and 4:30 p.m. Additionally, plaintiff testified that she is no longer able to hunt, fish, or do craft projects, due to chronic pain. (Tr. 449).

Charles L. Cooke, M.D., a rheumatologist, testified at the administrative hearing as a medical expert. Dr. Cooke reviewed Mrs. Brown's medical records and was present during the plaintiff's testimony. (Tr. 454). When asked whether he had ever diagnosed a patient with fibromyalgia, Dr. Cooke testified that he "stopped counting at about 5,000." (Tr. 463). Dr. Cooke testified that fibromyalgia "[a]lmost invariably . . . will get better with exercise," and that he had "never seen anybody with fibromyalgia get better if they don't exercise." (Tr. 259). Dr. Cooke

9

emphasized that Dr. Lee's physical residual functional capacity assessment was based on plaintiff's subjective complaints, and that, based upon the objective evidence, Dr. Lee's limitations were "far too restrictive." (Tr. 462). Dr. Cook opined that plaintiff retains the physical residual functional capacity to perform light work with no postural or manipulative limitations, but that, due to distractions from pain, plaintiff is precluded from climbing ropes or scaffolds and working from heights or around hazardous machinery. (Tr. 461).

The Law Judge then sought the testimony of Barry Hensley, a vocational expert. (Tr. 465). The Law Judge asked the vocational expert whether jobs exist for an individual with the same age, education, and work experience as plaintiff, who has the following restrictions:

> Let's assume that I find that she's confined to lifting 10 pounds frequently, 20 pounds occasionally, can stand and walk four to six hours in an eight-hour day, be able to sit six hours in an eight-hour day. There would be no postural limitations. She would be precluded from working around heights or moving machinery. . . . [and] would have some mild difficulty performing detailed and complex tasks. She appears to be capable of performing simple and repetitive tasks. Her ability to maintain regular attendance in the workplace, perform work activities on a consistent basis and completing a normal workday and workweek without interruption from psychiatric illness appears to be mildly impaired. She does appear to be capable of accepting instruction from supervisors. Her ability to interact with co-workers and the public as well as coping with routine stressors encountered in competitive work appears to be moderately impaired. Factor in pain of sufficient severity to be noticeable to her at all times in a moderate range, but that nevertheless within these limitations that I just mentioned she could carry out assigned duties.

(Tr. 468-469). In response, the vocational expert testified that it would be possible for such individual to work as an amusement attendant, file clerk, and bookkeeping clerk. (Tr. 470).

In deciding that Mrs. Brown is not totally disabled, the Law Judge discredited plaintiff's testimony regarding the intensity, duration, and limiting effects of the pain associated with her

10

fibromyalgia, emphasizing that the plaintiff's testimony was inconsistent with the medical evidence on record. The Law Judge noted that, over the years, Mrs. Brown has responded well to certain medications, trigger point therapy, and the use of a TENS unit. Likewise, the Law Judge noted that Dr. Lee indicated on multiple occasions that Mrs. Brown was not in need of trigger point injections, and that Mrs. Brown reported an 80% improvement following physical therapy. Having reviewed the record, the court finds that the Law Judge's decision to discount certain portions of Mrs. Brown's testimony is supported by substantial evidence.

The court also finds substantial evidence to support the Law Judge's decision to assign lesser weight to the residual functional capacity assessments completed by Dr. Miller and Dr. Lee. The Law Judge emphasized that both assessments were based on the plaintiff's subjective complaints, and that neither assessment was supported by the medical evidence. The Law Judge's decision to accord lesser weight to these assessments is consistent with the opinion of the state agency physician, Dr. Kadian, who opined that Dr. Miller's February 2004 assessment was not supported by the evidence, and the opinion of Dr. Cooke, who testified that, based on the objective evidence, Dr. Lee's limitations were "far too restrictive." (Tr. 462). As Dr. Cooke explained during the administrative hearing, Mrs. Brown's physical findings confirm that she is not totally disabled as a result of fibromyalgia. The most recent treatment notes from Augusta Pain Management Center indicate that plaintiff had full strength in her upper and lower extremities, and that her sensory and motor examinations were within normal limits. Although plaintiff had some generalized tenderness in her neck, shoulders, and back, her pain physicians noted that she had "nothing outstanding," and that she was moving easily. (Tr. 292, 354, 357, 362). Furthermore, x-rays of plaintiff's cervical spine and lumbosacral spine in March of 2005 revealed no abnormalities.

11

Accordingly, the court concludes that the Law Judge's decision to discount the opinions of Dr. Miller and Dr. Lee is supported by the record. See 20 C.F.R. § 404.1527(d).

Finally, the court finds substantial evidence to support the Law Judge's determination that Mrs. Brown's depression is not disabling. Plaintiff's own treating psychologist, Dr. Plehn, opined that the extent of her psychological difficulties "does not appear to be significant so as to be disabling." (Tr. 272). Additionally, both state agency psychologists opined that plaintiff retains the capacity to perform at least routine work, and Dr. Cianciolo, who performed a psychological assessment in October of 2005, opined that plaintiff has moderate restrictions in her ability to interact appropriately with the public and respond appropriately to pressures in a competitive work setting, but only slight or no restrictions in all other work-related areas. The Law Judge fully accounted for any work-related limitations resulting from her emotional impairment by restricting her to the limitations set forth in Dr. Cianciolo's report, and the vocational expert was able to identify work that Mrs. Brown can perform despite such limitations. Accordingly, substantial evidence supports the Law Judge's finding that plaintiff is not totally disabled as a result of depression.

Having found substantial evidence to support the Commissioner's determination that Mrs. Brown is not totally disabled, the court concludes that the Commissioner's final decision must be affirmed. In affirming the Commissioner's final decision, the court does not suggest that Mrs. Brown is totally free of pain and discomfort. However, it must be recognized that the inability to work without any subjective complaints does not of itself render a claimant totally disabled. Craig v. Chater, 76 F.3d 585, 592 (4th Cir. 1996). It appears to the court that the Administrative Law Judge gave full consideration to all of the subjective factors in adjudicating plaintiff's claims

for benefits. It follows that all facets of the Commissioner's final decision are supported by substantial evidence.

As a general rule, the resolution of conflicts in the evidence is a matter within the province of the Commissioner, even if the court might resolve the conflicts differently. Richardson v. Perales, supra; Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974). For the reasons stated, the court finds the Commissioner's resolution of the pertinent conflicts in the record in this case to be supported by substantial evidence. Accordingly, the final decision of the Commissioner must be affirmed. Laws v. Celebrezze, supra.

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This \_\_\_1st\_\_\_ day of December, 2007.

_/s/ Glen Conrad_
United States District Judge